Maria D'Inzillo, Plaintiff, *v.* Joseph Basile, Defendant.

Supreme Court, Special Term, Kings County, January 21, 1943.

*Allen Goodwin* for plaintiff.

*Jacob Pesachowitz* for defendant.

Cuff, J. Plaintiff and defendant are adjoining property owners on the south side of Seventieth Street, Brooklyn, N. Y. In December, 1941, defendant erected a wall on his premises which plaintiff claims violates section 3 of the Real Property Law in that it is a spite fence which cuts off the light and air from windows in the side of her house.

Plaintiff's house was built in 1909. In 1914 the brother of plaintiff's husband became its owner and continued in title until August 20, 1924, when he conveyed the premises to plaintiff and her husband. During the ownership of plaintiff's brother-in-law, plaintiff's husband served as sort of caretaker and made repairs.

When plaintiff's house was erected the plot to the west was vacant. The builder placed the west wall flush upon the west lot line. He also placed four windows, two on the first floor

and two on the second, in that west wall, which, of course, over-looked the plot to the west. On that plot, in 1916, defendant built his house. Both houses are the two-story-and-basement type.

Defendant's east wall (which abutted plaintiff's west wall) beginning at the front building line extended south twenty-eight feet along defendant's east lot line (Exhibit 5). Then it turned west at right angles for six feet and turning again and making a right angle, it went south about twelve feet to the rear wall of the building. That jog in defendant's east wall created a space or areaway on defendant's property in the rear between plaintiff's and defendant's houses approximately twelve by six feet. The first part of defendant's east wall (the twenty-eight feet) cut off the two northernmost windows in plaintiff's west wall. It almost reached a third upper window. That window was moved by plaintiff's husband (then caretaker) a foot south to save its serviceability. Plaintiff's brother-in-law (then the owner) took no action when those two windows were shut off in 1916. Thus, that areaway preserved light and air for plaintiff's two windows which remained.

The position of plaintiff's windows is important. Both open into bedrooms. The one in the lower floor is across from and on the same level with the kitchen window in defendant's house. It is not directly opposite defendant's window, being a little further north. A person in either house while standing in the room back from the window may see into the other house by looking through the window from the side. The upper window in plaintiff's west wall is about one foot from a bedroom window in defendant's house. The last-mentioned window is in the center of that six-foot wall which joins the two parts of defendant's east wall described above. That window faces south. Plaintiff's window faces west. They are at right angles. Twelve inches in a straight line, as has been pointed out, separate their nearest points. It is obvious that persons in each house can see through these bedroom windows into the room in the other house while normally using the rooms and without moving close to the windows.

Sounds such as normal conversation can be heard in defendant's house emanating from plaintiff's house because of the proximity of those four windows. Defendant, without so desiring, was presented with full views of the most intimate actions of the occupants of the bedrooms in plaintiff's house.

Defendant offered evidence that he was actually disturbed by loud talking coming through the windows of plaintiff's

rooms; that such annoyance was continuous over the years; that he complained to plaintiff's husband, but to no avail.

The Real Property Law codified the common law with respect to " spite fences." Such construction is made unlawful, may be enjoined and adjudged a private nuisance (§ 3). The last clause provides that the section shall not " preclude the owner or lessee of land from hereafter improving the same by the erection of any structure thereon in good faith."

The wall which plaintiff seeks to have declared a private nuisance is five feet, eight and one-quarter inches in length, a foot thick, twenty-six feet high. It is the continuation of defendant's east wall from the point where that wall joins the south six-foot wall mentioned above. It wholly covers plaintiff's two remaining west-wall windows. It is of the same construction and material as defendant's east wall and extends upward from the ground to the roof.

Defendant testified that it was his intention some day to build a closed-in porch, using that extended wall for its east side. Suppose that explanation is not accepted and that it is concluded that defendant built the wall for the purpose of shutting off the noise of which he has complained, coming through plaintiff's west-wall windows into his house, and to preserve for the two rooms in his house which open into that areaway some degree of privacy, would his act violate the Real Property Law?

When plaintiff's house was built and windows were placed on the west side wall overlooking the adjacent plot, did the owner not assume the risk of having those windows shut off by the erection of an adjacent building? The answer is yes. Did that owner acquire any rights by placing those windows in that west wall with respect to the use of the property by the owner to the west? Of course not. Plaintiff built with notice of the rights of the adjoining property owner. There was testimony by an architect that " the law " up to 1925 prohibited windows in a side wall built on the lot line. He said houses were not constructed that way on inside lots. That ordinance or regulation has not been cited. Nevertheless the court will take judicial notice that such unusual construction was indulged in at the owner's peril.

The fence prohibited by the Real Property Law is one constructed and intended " to exclude the owner or occupant of a structure on adjoining land from enjoyment of light or air " (§ 3). Defendant's wall was not erected for that purpose. Defendant built his wall in order to get that use of his prop-

erty which the law guarantees, viz., quiet and peaceful enjoyment, which was being denied to him.. It so happens that defendant's wall deprives plaintiff of the use of two windows. Plain-- tiff has no complaint. Over all of these years plaintiff has enjoyed the service of those windows although their existence has been a source of serious annoyance to defendant; because of their proximity to defendant's windows that condition was bound to eventuate. As long as they are there they will be the cause of trouble between neighbors and interfere substantially with defendant's enjoyment of his property.

A home loses its usefulness when windows in other houses are so near that the privacy of the occupants is invaded. In this instance ordinary conversation traveled across that five-foot space. Without trying, one could look over that areaway into the other house. Plaintiff's suit seeks to continue that condition.

The court finds that defendant erected the wall not to exclude plaintiff from the enjoyment of light or air, but for the purpose of making use, in good faith, of his own property; that the presence of those windows in plaintiff's west wall is a nuisance and a detriment to defendant's property; that plaintiff, although warned, failed to remove them; that erection of the wall by defendant was a proper use of his property.

The counterclaim of encroachment as well as plaintiff's claims of encroachment must be disregarded because neither party offered any evidence to prove that any damage resulted from those encroachments.

Judgment dismissing the complaint, with costs, and dismissing the counterclaim will be entered.